# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# BOWLING GREEN DIVISION

**CIVIL ACTION NO. 1:17-CV-00158-JHM**

**CITY OF BOWLING GREEN, KENTUCKY**                                              **PLAINTIFF**

**V.**

**MILLS FAMILY REALTY, INC., et al.**                                                       **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion to dismiss by defendants Mills Family Realty, Inc. ("MFR"), MR Group, Inc. ("MRG"), Chris Mills, Clinton Mills, and Ed Mills. (DN 7.) Also before the Court is a motion by the same defendants for leave to file a reply in excess of fifteen pages. (DN 13.) These matters are ripe for decision.

### I. BACKGROUND

This case arises from a construction project in downtown Bowling Green ("the city") known as the Block 6 WRAP Project. The project was to consist of "wrapping" a parking garage with office, retail, and restaurant space. (Pl.'s Compl. [DN 1] ¶ 18.) To pay for the project, Warren County issued industrial revenue bonds ("IRBs"), which were to be repaid from three sources of revenue. (*Id.* ¶¶ 23–24.) First, payments were to come from the city, as it pledged its increased tax revenues generated within the tax increment financing ("TIF") district that included the area in which the project was being developed. (*Id.*) Second, sublease payments from subtenants leasing the newly-built structure were to support the bond payments. (*Id.*) And third, the city agreed to serve as a "backstop" for the debt payments; if there was any shortfall in making the payments, the city agreed to lease the parking garage so that those funds could be used to repay the debt. (*Id.* ¶¶ 23–25.)

The original subdeveloper on the project was Circus Square Development, LLC, a now-defunct company owned and operated by defendant Rick Kelley. (*Id.* ¶ 19.) After Circus Square was unable to perform due to financial difficulties, Kelley approached defendants Chris, Clinton, and Ed Mills about becoming the new subdeveloper. (*Id.* ¶¶ 19–20.) The Mills agreed and formed MFR to act as the subdeveloper on the project. (*Id.* ¶ 20.) In its application to serve as subdeveloper, MFR represented that the project would cost $21.5 million. (*Id.* ¶ 22.) Warren County approved the issuance of $22 million in IRBs to pay for the construction of the project. (*Id.* ¶ 25.)

The complaint alleges that the defendants devised a scheme to gain access to monies beyond those available to it as subdeveloper and use those funds for unauthorized purposes. The city alleges that the defendants made arrangements and agreements, without the city's consent or knowledge, that allowed the general construction fund to be comingled with TIF revenue that the city was entitled to and was to be used solely to meet the city's bond obligations. (*Id.* ¶¶ 26–28.) The city also alleges that the defendants changed the operating agreement after the city had reviewed and given its final approval, and in doing so, allowed one of the subtenants, MRG, to have access to bond funds as working capital, despite the fact that the city had not approved this language, had a right to review the final operating agreement, and no other tenant had the same access to bond funds. (*Id.* ¶¶ 31–42.) The defendants allegedly took bond proceeds that were to be used for constructing the project, as well as TIF revenue that it had no right to use at all, and instead put this money towards developing their own personal restaurants that were to be located in the project, all while concealing the fact that the money was being used in this way or that defendant Kelley was even involved in the restaurant projects. (*Id.* ¶¶ 43–50.) Additionally, every time the defendants withdrew money from the bond trustee, U.S. Bank, they allegedly

made fraudulent representations about the status of their work and the purpose towards which the funds were to be used. (*Id.* ¶¶ 56–60.) This scheme allowed the defendants to wrongfully spend both bond proceeds and TIF revenue and resulted in there being insufficient funds to pay for certain work that had been done on the project. (*Id.* ¶¶ 61–67.)

The city filed the present action on September 11, 2017, asserting nine claims. It asserts two claims for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") and one claim for conspiracy to violate RICO against all defendants. (Counts I–III, *id.* ¶¶ 68–89.) It asserts a claim of common law fraud against all defendants (Count IV, *id.* ¶¶ 90–93), while asserting claims for breach of contract and breach of duty of good faith and fair dealing against MFR only. (Counts V–VI, *id.* ¶¶ 94–102.) It asserts claims for breach of fiduciary duty and conversion against all defendants except MRG (Counts VII–VIII, *id.* ¶¶ 103–110), and it also asserts a claim for civil conspiracy against all defendants. (Count IX, *id*. ¶¶ 111–114.) All defendants but Kelley have moved to dismiss all counts against them. (DN 7.) The city has responded in opposition to dismissal (DN 12), and the moving defendants have filed a reply (DN 14), with an accompanying motion for leave to file the reply, as it exceeds the fifteen-page limit imposed by Local Rule 7.1(d). (DN 13.)

## II. STANDARD OF REVIEW

Upon a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), a court "must construe the complaint in the light most favorable to plaintiffs," *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citation omitted), "accept all well-pled factual allegations as true," *id.*, and determine whether the "complaint . . . states a plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Under this standard, the plaintiff must provide the grounds for its entitlement to relief, which "requires more than labels

and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff satisfies this standard only when it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A complaint falls short if it pleads facts "merely consistent with a defendant's liability" or if the alleged facts do not "permit the court to infer more than the mere possibility of misconduct." *Id*. at 678–79. Instead, it "must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id*. at 677 (quoting Fed. R. Civ. P. 8(a)(2)). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### III. DISCUSSION

As a preliminary matter, the Court **GRANTS** the motion for leave to file a reply in excess of fifteen pages. The defendants have adequately demonstrated that the complexity of the case, the number of claims at issue, and the individual grounds asserted both in support and in opposition to their motion justifies the length of their brief.

### A. RICO CLAIMS

The moving defendants argue that the three RICO claims must be dismissed for a variety of reasons. The Court will focus on one, the city's failure to allege an investment injury, as it finds that issue to be dispositive.

The city's two claims based upon actual violations of RICO (as opposed to the conspiracy claim) are brought pursuant to 18 U.S.C. § 1962(a), which makes it

> unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity . . . to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the

4

> establishment or operation of, any enterprise which is engaged in,
> or the activities of which affect, interstate or foreign commerce.

"Racketeering activity" is defined so as to "encompass dozens of state and federal offenses, known in RICO parlance as predicates." *RJR Nabisco, Inc. v. European Comm.*, 136 S. Ct. 2090, 2096 (2016) (citing 18 U.S.C. § 1961(1)). For these predicate offenses to form a "pattern," there must be "at least two acts of racketeering activity . . . occur[ing] within ten years" of each other. 18 U.S.C. § 1961(5). Further, these predicate acts must "demonstrate the existence or threat of continued criminal activity." *RJR Nabisco*, 136 S. Ct. at 2097 (citing *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989)).

The city alleges that the defendants committed over 25 predicate acts of racketeering, most of which were requests made by the defendants to withdraw funds from U.S. Bank in which they certified that they were entitled to the funds. (*See* Pl.'s Compl. [DN 1] ¶ 56–60.) Other predicate acts include emails and discussions between the city and the defendants in which the defendants made fraudulent misrepresentations about their use of funds. (*See id.* ¶¶ 43–55.) The Court assumes, without deciding, that all of these acts constitute predicate acts of racketeering and that, taken together, they form a pattern of racketeering activity.

In the Sixth Circuit, however, "in order to state a claim under § 1962(a), a plaintiff must plead a specific injury to the plaintiff caused by the investment of income into the racketeering enterprise, *distinct from* any injuries caused by the predicate acts of racketeering." *Vemco, Inc. v. Camardella*, 23 F.3d 129, 132 (6th Cir. 1994) (emphasis in original) (citing *Craighead v. E.F. Hutton & Co., Inc.*, 899 F.2d 485, 494 (6th Cir. 1990)). The moving defendants argue that the city has not met this requirement, as the complaint fails to adequately allege how the city was injured by the defendants' investment of the bond funds and TIF revenue into their own private

businesses in a way that is distinct from the injury the city allegedly suffered when the defendants committed the predicate racketeering offenses of withdrawing those same funds.

The city states the following in the complaint: "The investment of the bond proceeds yielded by Defendants' pattern of racketeering activity was the proximate cause of injury to the Plaintiff, constituting an investment injury and resulting in damages . . ." (Pl.'s Compl. [DN 1] ¶ 83.) Simply using the term "investment injury" is inadequate, as it is nothing more than a "formulaic recitation of the elements" of a § 1962(a) action. *Twombly*, 550 U.S. at 555. Instead, the Court must examine the factual content pled in the complaint to determine if the city has plausibly shown an injury from the defendants' investment of the funds that is separate from the injury suffered from the defendants' withdrawal of those same funds.

After reviewing the complaint, the Court finds that the city has not alleged any such injury arising from the defendants' use or investment of the bond funds and TIF revenue into their own businesses that is distinct from any alleged injury the city suffered as a result of the predicate racketeering offenses of withdrawing those same funds. First, looking at the specific language used in the complaint, the city has failed to provide much detail as to what its actual damages were or how they arose. It twice states that it "suffered and continues to suffer several million dollars in damages," but it provides no context to these statements other than stating that the defendants caused these damages. (*Id.* ¶¶ 2, 67.) It states that the project budget was out of balance and that some contractors were not paid for their work, but it does not state that the city corrected these deficiencies or suffered a monetary loss as a result. (*Id.* ¶¶ 65–66.) And again, it argues that it suffered an "investment injury" when the defendants invested their ill-gotten funds into their own businesses, but they provide no detail as to what this injury was. (*Id.* ¶ 83.)

Even if the Court extrapolates as to how the scheme alleged by the city *could* have caused its injuries, the city still cannot state a claim based upon it suffering an investment injury. The city's alleged injury is its loss of millions of dollars. It argues that this injury occurred when the defendants invested the bond proceeds and TIF revenue into their individual businesses. But the city also argues that the predicate racketeering acts in this case were the withdrawal requests made to U.S. Bank and the correspondence that was sent to fraudulently gain access to these funds. The injury that resulted from the predicate acts is the same injury that resulted from the investment of those funds, in that the city no longer had those funds at its disposal.[1] When the funds were fraudulently withdrawn by the defendants, the city no longer had access to them, but when the funds were invested in the defendants' businesses, the only injury to the city was that it *still* didn't have access to them. When the defendants fraudulently withdrew the money, the only injury the city alleges was complete.

The city argues that its injury was only complete upon the investment of the money into the defendants' businesses since, until that act occurred, the defendants still could have used the money for a permitted purpose, such as construction costs. (Pl.'s Resp. to Mot. to Dismiss [DN 12] at 28.) But this argument is unpersuasive. The city alleges two different types of funds were misappropriated: bond proceeds and TIF revenue. (Pl.'s Compl. [DN 1] ¶ 61.) However, the city does not allege or explain how its loss of millions of dollars was dependent on how the funds were ultimately used for either category, which would be necessary for there to be two distinct injuries arising from the (1) withdrawal and then (2) investment of the funds. In fact, it shows quite the opposite.

---

[1] As will be discussed throughout the opinion, it is important to make a distinction between the two different types of funds the defendants are alleged to have misappropriated: bond proceeds, which the city was never entitled to receive but was partially responsible for helping to repay the associated debt, and TIF revenue, which the city was entitled to receive. As a corollary, the defendants had a right to receive the bonds proceeds but no right to possess or spend the TIF revenue. (*See* Pl.'s Compl. [DN 1] ¶¶ 23–27.)

As for the bond proceeds, the complaint fails to establish how the city suffered an injury from the defendants' misuse of this money. The bonds were issued by Warren County, not the city. (*Id.* ¶ 23.) While the city was responsible in part for paying off the bonds, its liability on the bonds did not rise and fall based upon *how* the bond proceeds were spend by the defendants. Its liability was only dependent on whether there was sufficient money from TIF revenue and sublease payments to cover the debt payments, which had nothing to do with whether the bond proceeds were spent in accordance with the relevant agreements or put towards some other unauthorized purpose, such as into the defendants' personal businesses. (*Id.*) Therefore, the city cannot argue that its injury only occurred once those proceeds were invested into the defendants' businesses and not when the money was withdrawn, since its liability for paying back the loan was not dependent on how the money was spent. And as for the TIF revenue, the complaint alleges that the defendants were *never* supposed to have access to those funds. (*Id.* ¶ 27.) Therefore, as soon as the defendants withdrew those funds, the injury was complete, regardless of what future use the defendants made of the funds. As such, the city cannot establish that the injury it suffered was dependent on the future investment of the bond proceeds or TIF revenue.

The complaint fails to adequately allege an injury that arose from the investment of the misappropriated funds that is distinct from any injury that resulted from the predicate offense of withdrawing those same funds. As such, Counts I and II for § 1962(a) RICO violations must fail. *Accord Masterson v. Meade Cty. Fiscal Court*, 489 F. Supp. 2d 740, 749–50 (W.D. Ky. 2007) (dismissing § 1962(a) action for failure to plead investment injury).

For the city's RICO conspiracy claim to survive, the complaint "must successfully allege all the elements of a RICO violation, as well as . . . the existence of an illicit agreement to violate the substantive RICO provision." *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d

393, 411 (6th Cir. 2012) (quotations omitted). The city only alleges that the defendants substantively violated RICO pursuant to § 1962(a), and the Court has determined that those claims are not viable for want of an investment injury to the city. As such, Count III for RICO conspiracy must fail as well. Therefore, the motion to dismiss is **GRANTED** as to Counts I–III.

### B. JURISDICTION OVER STATE LAW CLAIMS

The dismissal of the RICO claims requires this Court to examine its subject matter jurisdiction. The analysis of the RICO claims against the moving defendants would apply equally to the same claims against Kelley. And while Kelley did not join the motion to dismiss, he did assert in his answer that "[t]he Complaint fails to state a cause of action sufficient to permit relief to be granted against the Defendant and should accordingly be dismissed." (Def.'s Answer [DN 10] ¶ 1.) The Court agrees with Kelley, and Counts I–III are likewise dismissed against him.

As such, only state law claims remain in this action. The Court's subject matter jurisdiction was premised upon the case arising under federal law. *See* 28 U.S.C. § 1331. With the dismissal of all of the federal claims, however, the Court may decline to exercise supplemental jurisdiction over any remaining state law claims. 28 U.S.C. § 1367(c)(3). "In determining whether to exercise supplemental jurisdiction, federal courts balance the values of judicial economy, convenience to the parties, fairness and comity to state courts." *Packard v. Farmers Ins. Co. of Columbus Inc.*, 423 F. App'x 580, 584 (6th Cir. 2011). However, "[g]enerally, if the federal claims are dismissed before trial . . . the state claims should be dismissed as well." *Harper v. AutoAlliance Int'l, Inc.*, 392 F.3d 195, 210 (6th Cir. 2004) (quotations omitted). "Because all parties are Kentucky residents, the claims arise under Kentucky law, and the Court can discern no important federal interest in deciding the issues

presented," the Court will decline to exercise supplemental jurisdiction over any remaining state law claims. *Litz v. Univ. of Ky.*, 2013 WL 2257697, at *8 (E.D. Ky. May 22, 2013). Therefore, Counts IV–IX are **DISMISSED** without prejudice.

### IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the motion to dismiss (DN 7) is **GRANTED**. All of the claims asserted in the complaint are **DISMISSED** without prejudice. **IT IS FURTHER ORDERED** that the motion for leave to file a reply in excess of fifteen pages (DN 13) is **GRANTED**.

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**
December 19, 2017

cc: counsel of record